IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

PATRICK HOWARD PHELPS                                                                          PLAINTIFF
ADC #92459

V.                                           NO. 4:05CV01652 GTE

DEAN ROBERTS, et al                                                                          DEFENDANTS

ORDER

On November 3, 2005, Plaintiff, a pro se inmate currently confined to the East Arkansas Regional Unit of the Arkansas Department of Correction, filed this 42 U.S.C. § 1983 civil rights action (docket entry #2) along with a separate application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915 (docket entry #1). Plaintiff submitted the proper financial information in compliance with § 1915(a)'s requirements; accordingly, in forma pauperis status was granted (docket entry #3). Because it appears from the face of Plaintiff's complaint that it may be time-barred and, if so, frivolous, Plaintiff is directed to show cause why this case should not be dismissed.

**I. Background**

Plaintiff is a convicted sex-offender. According to his complaint, in September 2002 he was enrolled for the fall term at the University of Central Arkansas ("UCA"). In mid-September his parole officer advised him that UCA officials wanted to meet with them. "A day or two later" the meeting took place. UCA officials had learned that Plaintiff was a convicted sex-offender and due to a new law passed by the state legislature, they were required to conduct a notification process that would consist of the following: posting Plaintiff's photo and crime description in each dorm room, fraternity, and sorority, and notifying each student in each of Plaintiff's classes (while Plaintiff was present) of his sex-offender status, details of his crimes, a description of his vehicle and license plate number,

and where he lived.  Plaintiff was advised that he could withdraw from the university if he wished to avoid this process.  When Plaintiff declined to withdraw, Defendant Roberts explained that UCA could not guarantee his safety and further disclaimed any ability by the university to prosecute those individuals who might harm him in the future.  Plaintiff was further advised that he could continue to attend all classes except his physical education class in the gymnasium; however, he was denied access to any other facility on campus except the classrooms.  Plaintiff was warned if he violated this mandate, he would be arrested and charged with criminal trespass.

"Some days later" Plaintiff was contacted by Defendant Roberts for a meeting. When Plaintiff met with him, he was advised that Defendant Roberts and his immediate superior had determined that he should be administratively withdrawn from the university based on his sex-offender status.  Although Plaintiff was given the opportunity to appeal this decision to Defendant Roberts' superior (which Plaintiff did in writing during this meeting), Defendant Roberts explained that the results of any appeal would more than likely be disappointing since his superior had already agreed to the administrative withdrawal. When Plaintiff asked whether he had broken any university rule or whether the university had received any complaints regarding his presence on campus, Defendant Roberts stated they had not.  Plaintiff then inquired into the ability of UCA to refund his university expenses incurred and student monies loaned. "Later on in the week" Defendant Roberts contacted Plaintiff by phone and explained that he and his superiors had discussed the financial aspects of Plaintiff's situation and were prepared to offer the following deal: if Plaintiff would agree not to file any future lawsuits, they would refund the cost of his books which had been calculated at $150.00 based on his student money account withdrawals.  Plaintiff countered that he had spent almost $500.00 on books and

supplies and owed well over $3,000.00 in student loans, both of which should be covered by UCA. Both Defendant Roberts' offer and Plaintiff's counter-offer were rejected and Plaintiff was advised to come by Defendant Roberts' office to pick up a letter outlining UCA's decision, which he did. In several subsequent telephone conversations with Defendant Roberts, the issue of reimbursement was discussed. Plaintiff was advised that his refusal to sign a waiver voiding any future lawsuits precluded further contact.

Plaintiff contends that UCA discriminated, punished, and retaliated against him based on his sex-offender status. Plaintiff further asserts that he is the only sex-offender barred from UCA. As a consequence of his forced withdrawal from the university, all financial aid provided to Plaintiff was terminated. As a result of this incident, Plaintiff alleges he has incurred losses of approximately $25,000.00 as well as suffered great emotional damage.

## II.  Statute of Limitations Issue

It is a general principle of federal civil procedure that courts can raise affirmative defenses sua sponte if it "'is so plain from the face of the complaint that the suit can be regarded as frivolous; and the district judge need not wait for an answer before dismissing the suit.'" World Church of Creator v. Te-Ta-Ma Truth Found.-Family of URI, Inc., 239 F. Supp.2d 846, 847 (C.D. Ill. 2003) (citing Walker v. Thompson, 288 F.3d 1005, 1009 (7th Cir. 2002)); Pino v. Ryan, 49 F.3d 51, 53 (2nd Cir. 1995) (sua sponte dismissal prior to service of the pro se complaint upheld on limitations grounds as a dismissal for frivolousness since such a claim "is based on an indisputably meritless legal theory"). It is also clear that the Prison Litigation Reform Act makes Fed. R. Civ. P. 12(b)(6) grounds available to a district court at any time, and in fact seems to make dismissal on such grounds mandatory. See 28 U.S.C. § 1915(e)(2) ("[T]he court shall dismiss the case at any

time if the court determines that . . . (B) the action or appeal . . . (iii) fails to state a claim on which relief may be granted") (emphasis added).

Plaintiff's claims, which stem from an incident that occurred in September 2002, appear to be untimely filed. Under federal law, a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action. See United States v. Kubrick, 444 U.S. 111, 122-24 (1979); see also Hill v. State of Iowa, 89 F.3d 840 (8th Cir. 1996) (unpub. per curiam); Piotrowski v. City of Houston, 51 F.3d 512, 515 (5th Cir. 1995) ("Under federal law, the [limitations] period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured'") (internal citations and quotations omitted). In Kubrick, the Supreme Court held that for a cause of action to accrue, it is critical that the plaintiff know that he has been hurt and who inflicted the injury. Once imputed with that knowledge, the plaintiff is on inquiry notice, imposing on him a duty to inquire about the details of negligence that are reasonably discoverable: "To excuse him from promptly [making inquiry] by postponing the accrual of his claim would undermine the purpose of the limitations statute." Kubrick, 444 U.S. at 123. Thus, for purposes of Plaintiff's § 1983 claim, his cause of action accrued either when he gained knowledge of his claim or when he was put on notice (by the knowledge of the fact of injury and who caused it) to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim. See Chalmers v. Toyota Motor Sales, USA, Inc., 935 S.W.2d 258, 261 (Ark. 1996) (the limitations period begins running when "there is a complete and present cause of action" and "in the absence of concealment of the wrong, when the injury occurs, not when it is discovered"); see also Ormiston v. Nelson, 117 F.3d 69, 72 (2d Cir. 1997) (a plaintiff whose claim would otherwise be time barred "must plead facts indicating that

he was not able to comprehend the nature of his circumstances" when the injury occurred); Collyer v. Darling, 98 F.3d 211, 220 (6th Cir. 1996) (§ 1983 claims accrue "when the plaintiff knows or has reason to know that the act providing the basis of his . . . injury has occurred"); Baker v. Bd. of Regents of State of Kan., 991 F.2d 628, 632 (10th Cir. 1993) (under the federal accrual rule, "it is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue") (internal citations omitted); Burns v. Town of Lamoine, 43 F. Supp.2d 63, 68-69 (D. Me. 1999) (the fact that the plaintiff was unaware that her injury gave rise to a claim for relief is irrelevant; "There is no federal accrual doctrine or 'discovery rule' that tolls the statute of limitations where a plaintiff was aware of his injury, but unaware of a potential legal theory. A plaintiff's unfamiliarity with possible legal recourse will not toll the statute of limitations").

While the accrual question is governed by federal law, the relevant limitations period is determined by state law. In Wilson v. Garcia, 471 U.S. 261 (1985), the United States Supreme Court held that § 1983 actions should be characterized as personal injury claims, and, as such, are governed by the personal injury statute of limitations in the state where the alleged injury occurred. In Arkansas, the general personal injury statute of limitations is three years, and this period therefore governs § 1983 actions brought in this state. See Ark. Code Ann. § 16-56-105; Ketchum v. City of West Memphis, Ark., 974 F.2d 81, 82 (8th Cir. 1992). In applying these state limitations statutes, federal courts also follow the tolling laws of the state where the injury occurred. Hardin v. Straub, 490 U.S. 536 (1989); Bd. of Regents of the Univ. of the State of N.Y. v. Tomanio, 446 U.S. 478, 484 (1980).

In the present case, sometime in mid-September 2002 the incidents that gave rise to this action occurred. Plaintiff's own account of the events establish that he first learned that UCA officials had requested a meeting with him in mid-September 2002. A day or two

later the meeting took place. Some days later, Plaintiff was advised of his administrative withdrawal from the university based on his sex-offender status. Later on in the week, Defendant Roberts contacted Plaintiff by phone concerning UCA's financial offer. When this was rejected, Plaintiff was advised to come by Defendant Roberts' office to pick up a letter outlining UCA's decision, which he did. Plaintiff's cause of action accrued the moment he knew or had reason to know of the injury which formed the basis of his action. Here, it is facially evident from Plaintiff's recitation of the facts that he had actual notice of the alleged cause of action (his forced withdrawal from the university based on his sex-offender status) by the end of September 2002 <u>at the latest</u>. Drawing all inferences in favor of Plaintiff, and using September 30, 2002, for limitations purposes, the last day he could file his complaint in this Court concerning his 2002 claims was September 30, 2005.

The file reflects that Plaintiff originally attempted to submit his complaint to United States Magistrate Judge Beverly S. Jones in the Western District of Arkansas. The envelope containing his original complaint is post-marked October 5, 2005, from Brickeys, Arkansas, where the East Arkansas Regional Unit (and Plaintiff) is located. By letter dated November 1, 2005, Plaintiff's complaint was properly forwarded to the Eastern District of Arkansas. Plaintiff's complaint was filed in this district on November 3, <u>2005</u>.[1] Consequently, the statute of limitations appear to bar Plaintiff's claims. Furthermore, Plaintiff has not pled facts that would merit tolling the limitations period. See <u>Bd. of Regents of Univ. of New York</u>, 446 U.S. at 484 (tolling for § 1983 claim determined by state

---

[1] Moreover, Plaintiff submitted his complaint to the Court unsigned. By order entered November 17, 2005 (docket entry #3), the Clerk of the Court was directed to return page 4 of Plaintiff's complaint to him for signature. Plaintiff was ordered to sign, date, and return page 4 of his complaint to the Court on or before December 17, 2005. On November 28, 2005, Plaintiff returned the signature page of his complaint (<u>see</u> docket entry #6).

law); Ark. Code Ann. §§ 16-56-116, 16-56-120 (Supp. 2001) (statute tolled only if plaintiff under disability at time action accrued or defendant acted to prevent plaintiff from commencing action).

Plaintiffs pursuing a § 1983 or other civil rights cause of action regularly attempt to elude the grasp of the statute of limitations defense by alleging that their claim constitutes a "continuing violation." Few of these challenges meet with success. A "continuing violation" is an exception to the statute of limitations in connection with claims based on actions that occurred before the statute of limitations period. Rural Water Sys. No. 1 v. City of Sioux Center, Iowa, 202 F.3d 1035 (8th Cir. 2000), aff'g 967 F. Supp. 1483, 1508 (N.D. Iowa 1997) (citing Varner v. Nat'l Super Mkt., Inc., 94 F.3d 1209, 1214 (8th Cir.1996)) (stating this same principle in a Title VII "hostile environment" case). "Although the 'continuing violation' theory is most often encountered in discrimination cases, it is also applicable to § 1983 claims for continuing violations of a federal law or the Constitution." See Rural Water Sys. No. 1, 967 F. Supp. at 1508 (citing Kuhnle Bros., Inc. v. County of Geauga, 103 F.3d 516, 520 (6th Cir.1997)). Thus, where a continuing violation is established, the limitations period runs from the "last occurrence" of wrongful conduct. Varner, 94 F.3d at 1214; Gipson v. KAS Snacktime Co., 83 F.3d 225, 229 (8th Cir.1996), appeal after remand aff'd 171 F.3d 574 (8th Cir. 1999). Furthermore, "the entire course of conduct creating the continuing violation is actionable." Rural Water Sys. No. 1, 967 F. Supp. at 1508 (citing Varner, 94 F.3d at 1214).

It is well settled, however, that the continuing effects of past harm do not bring a claim within the continuing violation doctrine. Delaware State Coll. v. Ricks, 449 U.S. 250 (1980); United Airlines v. Evans, 431 U.S. 553 (1977); Guerra v. Cuomo, 176 F.3d 547, 551 (D.C. Cir. 1999) (citing Dasgupta v. Univ. of Wisconsin Bd. of Regents, 121 F.3d 1138,

1140 (7th Cir.1997)) ("[a] lingering effect of an unlawful act is not itself an unlawful act"). In other words, continuing violations require continuing unlawful acts, not the continued ill effects from the original violation.  See LRL Properties v. Portage Metro Hous. Auth., 55 F.3d 1097, 1105 n.3 (6th Cir. 1995) (observing that the courts have been "extremely reluctant" to apply the continuing violations theory outside Title VII's context); Wilson v. Giesen, 956 F.2d 738, 743 (7th Cir. 1991) ("continuing wrong" theory did not apply to plaintiff's claims that prison disciplinary charges were filed to retaliate against the exercise of his First Amendment rights and that he was disciplined and prosecuted without due process; the continuing wrong theory "is not suited to cases . . . where the harm is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress"); Ingalls v. Florio, 968 F. Supp. 193 (D. N.J. 1997) (alleged delay in medical care did not constitute a continuing violation because plaintiff failed to assert same and did not allege difficulty in discovering his potential cause of action; theory was applicable where medical records indicated that co-plaintiff repeatedly sought medical care for his injury).

This much is clear: sometime between mid and late September 2002 the incidents that gave rise to this action occurred.  This too is clear: the harm was definite and discovered by Plaintiff at that time.  As early as his second meeting with Defendant Roberts, Plaintiff had begun to negotiate for a settlement.  In sum, for more than three years prior to filing the instant action, Plaintiff confirms that he knew he had been discriminated and retaliated against based on his sex-offender status.[2]

### III. Conclusion

---

[2] The Court makes no ruling herein whether sex-offender status constitutes a protected class entitled to constitutional safeguards in connection with claims of discrimination and retaliation.

For the reasons enumerated herein, Plaintiff is placed on notice that it appears to the Court that his claims are time-barred.  If Plaintiff disagrees, he is directed to file a statement with the Court setting forth any and all facts in support of his position that his claims are timely filed.  **Plaintiff is directed to file such statement within thirty (30) days of this order's entry date.  If Plaintiff fails to respond to this order, his complaint will be dismissed as time-barred and frivolous.**

IT IS SO ORDERED this  8th   day of February, 2006.

      /s/Garnett Thomas Eisele
UNITED STATES DISTRICT JUDGE