### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### WESTERN  DIVISION

**PATRICK HOWARD PHELPS**                                              **PLAINTIFF**

**VS.**                      **CASE NO. 4:05-CV-01652 GTE**

**DEAN ROBERTS, et al.**                                              **DEFENDANTS**

### ORDER OF DISMISSAL

Plaintiff, proceeding *pro se*, has responded to this Court's Order to show cause why his

Complaint should not be dismissed because it was filed too late.  For the reasons stated below,

the Court concludes that Plaintiff's action was filed outside the applicable three year limitations

period and must be dismissed.

### I.  Background

Plaintiff Patrick Howard Phelps brings this action against the University of Central

Arkansas ("UCA") and UCA officials contending that UCA discriminated against him in

September, 2002 when it unilaterally made the decision to administratively withdraw him from

UCA after learning of his status as a registered sex offender.  Plaintiff contends that UCA

discriminated, punished, and retaliated against him based on his sex-offender status.  Plaintiff

further asserts that he is the only sex-offender barred from UCA.  As a consequence of his forced

withdrawal from the university, all financial aid provided to Plaintiff was terminated.  Plaintiff

alleges that he has incurred losses of approximately $25,000 and great emotional damage as a

result of this incident.

1

The Court raised the statute of limitations issue *sua sponte*, finding that it appeared from the face of the Complaint that the suit had been untimely filed, but providing Plaintiff with thirty days to come forward with facts to demonstrate that the claims were timely filed.  (*See* Court's Order of February 8, 2006, Docket No. 7).  Plaintiff filed a nine page response supported by exhibits in support of his recitation of the facts.  Accepting those facts as true, it still does not appear that Plaintiff's claims were timely filed.

## II.  Statute of Limitations Issue

The Court's previous Order, Docket No. 7, contains an in-depth discussion of the legal principles applicable to the statute of limitations issue.  The Court will not repeat in detail that discussion, but notes the following basic principles.  A three year statute of limitations period applies to Plaintiff's § 1983 action.  *See* Ark. Code Ann. § 16-56-105; *Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992).   Plaintiff's action accrued and the limitations period began running either when he gained knowledge of his claim or when he was put on notice (by the knowledge of the fact of injury and who caused it) to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim.  *See Chalmers v. Toyota Motor Sales, USA, Inc.,* 935 S.W.2d 258, 261 (Ark. 1996)(the limitations period begins running when "there is a complete and present cause of action" and "in the absence of concealment of the wrong, when the injury occurs, not when it is discovered").

The following time-line is taken from Plaintiff's latest submission.  The Court accepts as true Plaintiff's version of when the events in question occurred.

On September 6, 2002, Plaintiff met with UCA officials, where he was pressured to voluntarily withdraw rather than face the trauma of student notification, which UCA intended to

make by passing around flyers advising of Plaintiff's sex-offender status.  Plaintiff declined, and

was advised that UCA would take the matter under consideration and make a decision on his

continued enrollment within the next few days.

On September 13, 2002, Plaintiff met with UCA Dean of Students Gary Roberts.  During

the meeting, Dean Roberts provided Plaintiff with a letter advising that as a result of learning of

Plaintiff's criminal conviction as a sex offender, UCA had made the decision to administratively

withdraw him from UCA.  The letter also advised Plaintiff that he was banned from the UCA

campus indefinitely, effective immediately.  Finally, the letter advised Plaintiff that he could

appeal the decision by giving notice in writing by 4:00 p.m. on Monday, September 16, 2002.

(UCA letter dated September 12, 2002, Exhibit 2 to Plaintiff's response).

Plaintiff appealed the decision.

On September 24, 2002, Plaintiff received a letter from Ronnie Williams, UCA's Vice

President for Student Services, stating in pertinent part:

Dear Patrick:

I have reviewed the final disposition of your September 12 administrative hearing with
Dr. Gary Roberts recommending your administrative withdrawal from the University,
effective immediately.

After consulting with university attorney Jack Gillean, probation officer Kelly Brock, and
Faulkner County Sheriff Marty Montgomery, I have decided to accept Dr. Robert's
recommendation without modification.
. . .

(UCA letter dated September 18, 2002, Exh. 3 to Pl.'s resp.).

For approximately two weeks after Plaintiff learned that his appeal had been denied, he

engaged in several conversations with UCA's Dean Roberts regarding whether Plaintiff might be

reenrolled (which Dean Roberts advised would be very unlikely), reimbursement for Plaintiff's

student loans, books & material expenses, and other issues.  Plaintiff states that during these

conversations, Dean Roberts indicated that he was in contact with other members of the UCA

administration and that they were looking into these matters.   Subsequently, Plaintiff had

conversations with Dean Roberts on October 8th and 15th of 2002, during which discussions were

had about reimbursement offers.  By Plaintiff's own admission, no discussions were had at this

point about Plaintiff's readmission to UCA, which Dean Roberts had advised "was out of the

question."  (Pl.'s resp. at p. 3).  On October 25, 2005, Plaintiff picked up a certified letter from

UCA containing a proposed Agreement and Release.  (Exh. 4 to Pl.'s resp.).  Plaintiff considered

its terms unacceptable and declined to accept the offer.  UCA withdrew its offer by letter dated

October 29, 2002.  (Exh. 5 to Pl.'s resp.).

Plaintiff contends that on September 5, 2005,  he completed the form packet provided by

the ADC and submitted the financial certificate (for use with the application to proceed in forma

pauperis pursuant to 28 U.S.C. § 1915) to the East Arkansas Regional Unit business office to be

completed and returned to Plaintiff.  The certificate was completed and signed by the business

office on Friday, September 23, 2005, and received by Plaintiff on Monday, September 26, 2005,

at evening mail call.  The next day, Plaintiff contends that he submitted an "inmate check" to the

mailroom to cover the cost of mailing the packet.  The cost of the postage was deducted from

Plaintiff's inmate account on October 4, 2005. The 1983 packet was then mailed out by the

mailroom on October 5, 2005.  Plaintiff points out that it took one month after he started the

process of filing a § 1983 complaint for it to be mailed from the ADC.

Plaintiff raises three arguments in opposition to the dismissal of his Complaint.  First, he

4

contends that "it was not until October 8, 2002, that he first became aware that the University of

Central Arkansas may have committed an act which violated Plaintiff's rights, as it was on this

date that Plaintiff was offered a settlement if he agreed not to sue UCA for their wrongdoing in

the administrative withdrawal of Plaintiff from UCA." (Pl.'s resp. at p. 5).  Second, Plaintiff also

contends that he should not be penalized for the fact that it took the prison Business Office 21

days to provide him with the required certificate noting the balance of his inmate account.  It

does appear that Plaintiff completed the Application to Proceed In Forma Pauperis on September

5, 2005, but the certificate and calculation of initial payment of filing fee was not completed until

September 23, 2005.  Finally, Plaintiff asserts that because to this day he is not allowed on UCA

premises under threat of arrest for criminal trespass, that this is a continuing violation.

The Court will address each argument separately.

**Date of Accrual**

The Court rejects Plaintiff's contention that the limitations period did not begin running

until October 8, 2002.  The issue is not when Plaintiff first learned that UCA's actions may have

violated his rights, but rather, when the injury occurred.  In essence, Plaintiff is arguing for a

discovery rule, under which the limitations period would not begin running until a plaintiff

learned that his rights had been violated.  Such a rule has rejected.

While the limitations period is determined by state law, the accrual question is governed

by federal law.  Applicable federal law provides that a cause of action accrues when the plaintiff

possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause

of action.  *See United States v. Kubrick*, 444 U.S. 111, 122-24 (1979).  In *Kubrick*, the Supreme

Court stressed that for a cause of action to accrue, it is critical that a plaintiff know that he has

been hurt and who has inflicted the injury.  This knowledge triggers the duty to inquire about

other details and to determine whether he has a legal claim.  "To excuse him from promptly

[making inquiry] by postponing the accrual of his claim would undermine the purpose of the

limitations statute."  *Kubrick*, 444 U.S. at 123.

In this case, Plaintiff learned on September 13, 2002, that UCA was administratively

terminating his enrollment because of his status as a registered sex offender.  Plaintiff was so

advised when he received and read a letter from UCA advising of the decision to terminate his

enrollment.  On that date, Plaintiff was aware of his injury and that UCA was the entity

responsible for it.  At that time, Plaintiff had all the knowledge he needed to inquire further to

determine (or to seek assistance to determine) whether UCA's action violated his legal rights.

The fact that Plaintiff may not have subjectively realized that he might in fact pursue a legal

challenge to UCA's decision is simply irrelevant to the analysis here.

A question arises as to whether the fact that Plaintiff was permitted to appeal the decision,

and did, affects the calculation of when the limitations period began to run.  Plaintiff's appeal

process was complete on September 24, 2002, when he learned his appeal had been denied and

that UCA was going to stand by its earlier decision.  Other courts have held that a pending

administrative appeal does not toll the running of the statute of limitations.  For example, in

*Roberson v. Tennessee*, 399 F.3d 792, 795 (6th Cir. 2005), the court rejected the plaintiff's

argument that the statute of limitations did not begin to run on his § 1983 claim in connection

with his dismissal from medical school until he "exhausted his administrative remedies."   The

court explained its rationale:

While [the plaintiff] was undoubtedly wise to utilize the appellate process

provided to him following the denial of his plea for reinstatement in 2002, it is clear that his allegations under § 1983 must include a discrete deprivation of rights finalized before the second process even began.  As the Supreme Court explained in a similar (educational) setting, "[t]he grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made." *Delaware State Coll. v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)(emphasis in original).  Cf. *Morse v. Univ. of Vermont*, 973 F.2d 122, 125 (2nd Cir. 1992)("the fact that UVM allowed appellant to continue to take courses and undertook an internal administrative review of its allegedly discriminatory decision has no effect on when the statute of limitations period begins to run.").

*Roberson*, 399 F.3d at 795.

On these facts, the Court concludes that any cause of action Plaintiff has under 42 U.S.C. § 1983 for his dismissal from UCA began accruing on September 13, 2002.  Because a three-year statute of limitations period applies to such claim, Plaintiff had until September 13, 2005 to file a timely complaint against UCA.

The file in this case reflects that Plaintiff's Complaint was filed on November 3, 2005. The envelope containing his original complaint is post-marked October 5, 2005, from Brickeys, Arkansas, where Plaintiff is incarcerated at East Arkansas Regional Unit.

**Prison Delay**

Apparently in an effort to justify the untimeliness of his Complaint, Plaintiff argues that he should not be penalized for the prison Business Office's 21 day delay in providing him with financial information regarding the balance of his inmate account, which he needed to submit with his Application to Proceed In Forma Pauperis.  The record reflects that Plaintiff completed the Application to Proceed In Forma Pauperis on September 5, 2005, but the certificate and calculation of initial payment of filing fee was not completed until September 23, 2005.  The Court accepts that this delay was the fault of the prison Business Office, over whom Plaintiff had

7

no control.

"Equitable tolling is appropriate only when the circumstances that cause a plaintiff to miss a filing deadline are out of his hands." *Heideman v. PFL, Inc.*, 904 F.2d 1262, 1266 (8th Cir. 1990), *cert. denied*, 498 U.S. 1026 (1991). The doctrine of equitable tolling is applied in a limited fashion.[1] In this context, it may only be permitted to the extent that "extraordinary circumstances" beyond the prisoner's control prevented the timely filing of his Complaint. *Gassler v. Bruton*, 255 F.3d 492, 495 (8th Cir. 2001). In *Gassler*, the Eighth Circuit held that the prisoner's delay in obtaining the transcript from his criminal trial did not justify the tolling of the time period for the prisoner to file his petition for post-conviction relief. While noting that it was understandable that the prisoner would want (and even need) the transcript prior to filing for post-conviction relief, the Court held it was not necessary for him to have the transcript in order to file his petition. *Id*.; *see also Paige v. United States*, 171 F.3d 559, 561 (8th Cir. 1999)(inter-prison mail delay and reliance on another inmate insufficient to trigger equitable tolling).

Similarly, here Plaintiff could have submitted his Complaint on September 5, 2005, the day he completed his § 1983 packet. Plaintiff himself admits that, had it been left to him, "he would have mailed the packet himself on or around September 5, 2005." (Pl.'s resp. at p. 7). He could have – and, in hindsight, should have – done so. Instead, Plaintiff forwarded his § 1983 packet to the prison Business Office to obtain the financial information for the Application to Proceed In Forma Pauperis ("IFP Application") and then waited 21 days for them to return it to

---

[1] Indeed, my colleague, The Honorable Judge Wilson, has commented in the context of litigation filed by prisoners that: "[w]hile the Eighth Circuit clearly holds the equitable tolling may be appropriate, it has yet to find any circumstances sufficiently 'extraordinary' to justify its application." *Shoemate v. Norris*, 2003 WL 23989923 (E.D. Ark. July 25, 2003)(unpublished opinion in Case No. 4:00-CV-00897 WRW).

him.

If Plaintiff had forwarded his Complaint and IFP Application to the Court without the

required calculation sheet, both would have been filed upon receipt.  The Court would then have

provided Plaintiff with thirty (30) days to supplement his IFP Application with the financial

information regarding his inmate trust account.  Assuming Plaintiff had attempted to mail his

Complaint to the Court prior to September 13, 2005, then Plaintiff would have a colorable

argument under the prison mailbox rule that his Complaint should be considered filed when he

placed it in the hands of prison officials for delivery to the Court.  *See Sulik v. Taney County,*

*Mo.*, 316 F.3d 813 (8th Cir. 2003).

Instead, Plaintiff made no effort to file his Complaint with the Court until October of

2005.  The envelope containing Plaintiff's original Complaint is post-marked October 5, 2005.[2]

The Court concludes that the circumstances here are not sufficiently "extraordinary" to

justify the application of the equitable tolling doctrine.  Plaintiff was not the victim of

extraordinary circumstances beyond his control, but rather, he elected to delay the filing of a

Complaint against UCA for over three years.  He now seeks to justify his late filing by the prison

system's 21 day delay in providing him with financial information to include with his IFP

Application.  Plaintiff offers no explanation for why he waited 1087 days – 8 days shy of the

three year limitations period –  to begin initiating a lawsuit against UCA for its actions on

September 13, 2002.

---

[2] Initially, Plaintiff mistakenly submitted his Complaint to United Magistrate Judge
Beverly S. Jones in the Western District of Arkansas, but it was properly forwarded to the
Eastern District of Arkansas, where it was filed on November 3, 2005.  Additionally, Plaintiff
submitted the Complaint unsigned, but the Court returned the last page of the Complaint to him
for signature.

**Equitable Tolling Due to Continuing No Trespass Order**

Finally, Plaintiff contends that because he remains subject to UCA's directive to stay off UCA property under threat of criminal trespass that the continuing violation principle applies to justify his untimely filing.  Plaintiff attempts to bolster his argument by contending that he was unable to attend UCA football games, theatrical productions, religious events and other activities from September 2002 forward.    The Court rejects this argument.

UCA's threat to prosecute Plaintiff for criminal trespass if he set foot on the campus was an ongoing effect of the action taken by UCA on September 12, 2002.   When Plaintiff read UCA's letter advising of his administrative withdrawal on September 13, 2002, he was also advised: "If you are found on campus premises during the ban period, you will be subject to arrest for criminal trespass."  (See Letter dated September 12, 2002, attached to Pl's resp.).

The law is well established that the continuing effects of past harm do not bring a claim within the continuing violation doctrine. *Delaware State Coll. v. Ricks*, 449 U.S. 250 (1980). Continuing violations require continuing unlawful acts, not the continued ill effects from the original violation. *See LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 n.3 (6th Cir. 1995)(observing that the courts have been "extremely reluctant" to apply the continuing violations theory outside the context of Title VII); *Wilson v. Giesen*, 956 F.2d 738, 743 (7th Cir. 1991)("continuing wrong" theory did not apply to plaintiff's claims that prison disciplinary charges were filed to retaliate against the exercise of his First Amendment rights and that he was disciplined and prosecuted without due process; the continuing wrong theory "is not suited to cases . . . where the harm is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress").

## CONCLUSION

For the reasons stated above, the Court concludes that Plaintiff failed to submit his

Complaint for filing within the applicable three year limitations period and that the circumstances

offered for his late filing are not sufficiently extraordinary to justify the application of the

equitable tolling doctrine.  Accordingly,

IT IS HEREBY ORDERED THAT Plaintiff's Complaint be, and it is hereby

DISMISSED.  The Clerk of the Court is directed to terminate this action.

IT IS SO ORDERED this 15th  day of June, 2006.

  /s/ Garnett Thomas Eisele
UNITED STATES DISTRICT JUDGE
